Good morning, Your Honor. My name is Jeffrey Sklarz, and may it please the Court, there are two issues presented in this appeal. First, whether the district court abused its discretion by entering a post-judgment payment in aberrance of Connecticut law, and second, whether the district court improperly allowed post-judgment discovery not concerning assets of the judgment debtor. Turning to the issue of the payment order, the relevant facts are as follows. This is a diversity case, so Connecticut law applies. The plaintiff obtained a $21 million judgment against the defendants, and that judgment has been appealed and is pending before another panel of this Court. In connection with the post-judgment activities, plaintiff requested a weekly payment order in connection with Connecticut law. At the time of the entry of judgment, the individual debtor Mr. Greer had two sources of income, wages from his employment and rental income from property in Rhode Island. By the time of the hearing on the weekly payment order, the — there was no longer any rental income. The lease had terminated. Therefore, the only asset Mr. Greer had subject to a weekly payment order would have been the wage income. Has the property since been rented? It has not, to the best of my knowledge. But it was rented throughout 2017 and for about 10 months of 2018. That's correct, Your Honor. Under — under Connecticut law, Connecticut General Statute 52-356d covers the weekly payment orders. And there's essentially two balanced — there's two elements that have to be looked at by a court in determining the weekly payment order. First, after a hearing and consideration of the judgment and the debtor's financial circumstances, so that's the initial analysis, the court may — there's no requirement, but it may order an installment payment reasonably calculated to facilitate payment of the judgment. Thus, the primary — the primary thing the court has to do is ascertain what assets the defendant has to pay a — pay a judgment. In this situation, the only asset available was the wage income. Now, under — and full financial disclosure was made as set forth in the record. This isn't a situation where there's the judgment debtor's hiding assets or income. Full disclosure was made. Under Connecticut law, a separate statute, 52-361a, the amount of funds subject to a wage levy or a wage execution is limited to 25 percent of disposable income. So at the time of the entry of the judgment, the weekly payment order here, the only asset available for collection would have been the 25 percent net income from the defendant. Now, given that the remedy for noncompliance of a weekly payment order is resort to a wage levy, to read the statutes congruently, it would — you can't have a situation where the only asset is wages, yet you issue a collection payment, a weekly payment order, of more than 25 percent. Specifically — Roberts. The 25 percent, though, only applies to earning — it doesn't — it wouldn't apply to rental under the definition of earnings, right? It's a separate — That's correct, Your Honor. So you're essentially arguing to us that even if someone had been collecting rent on a property, if there's some hiatus in that collection, that it's off-limits, the judge can't consider that and make a conclusion that it's reasonable to believe that there's going to be additional rent. There's a case, I think, about the bonus where a judge said, you're going to receive this bonus, we're going to include that, even though it's obviously not certain what a person's bonus is going to be. You're saying that's completely off-limits to a judge to make those kinds of assessments? There's nothing under the Connecticut law that would prohibit that. It's very fact — it's a very fact-specific inquiry. And in the Belfonte case, which Your Honor references, there, what happened there, it was a family-owned company, and basically the defendant's parents could decide whether or not to pay him or not pay him. That's not the circumstances. Do you explain to the — did anyone explain to the judge why it was unlikely this property would ever be rented, that there was something wrong with the property or the circumstances that it would never be rented under a reasonable amount of time? There was no testimony taken at that time. The circumstances underlying the judgment, I think, certainly had reasons why the property would have difficulty being rented, given who the landlord would be. There was no specific facts stated either why or why not the property would not be rented. But I think the inquiry should be, at the time of the weekly payment order, what are the actual facts? And the fact was that there was no rental income coming in. In the Belfonte case, there, it was a situation where the defendants, the judgment debtor's parents, had literal — had actual control over how much money they doled out and could withhold those funds. And therefore, that's — There's no — if the judge isn't apprised of any reason to think you can't rent the property, it had rented in the previous years for substantial portions or all of those years, it's hard to see how the judge abused its discretion or erred in including rental property in anticipating that the property would be rented. Well, I don't believe there was — there was no evidence that the property would be rent — would be rented. It was simply — it was that the lease had expired and in that interim period no one had rented the property. And given the circumstances underlying the judgment against the defendants, certainly that's a major change in circumstances. Given the nature of the landlord that now has the judgment against him for what he did or what he's alleged to have done, certainly that affects the rental ability of the property, and I don't know that that was ever taken into account by the judge. Is there anything in the Connecticut law that prevents someone from going back to the judge to change the installment plan based upon changed circumstances? There is not, Your Honor. So if the property didn't get rented for a long period of time, your client could always go back to the judge and say, look, we haven't been able to rent this in a year, two years, whatever it might be, right? Certainly. But I think the better course is what are the facts on the ground at the time of the entry of the weekly payment order, and if the circumstances change, the plaintiff certainly can come back and ask that the payment order be increased in connection with increased income. It shouldn't be there is no income now, we're going to make him pay — we're going to make the defendant pay more because that would be out of — that would essentially be saying we're going to increase a wage garnishment in excess of 25 percent because that's the only place where the — where the funds could have come from. Let me ask you quickly about the protective order issue. Yeah. Oh, yes, Your Honor. Why isn't — let me just try to focus you on one of the questions I had. Why isn't it potentially moot by the new action? Isn't all that discovery going to happen in the new action? I think you're — I think you're right, Your Honor. I — as we said in our reply brief, I think it is moot on account of the new action. They would be entitled to discovery there. However, we believe it is wrong in an aberrance with prevailing law. Why wouldn't — why is — do we have jurisdiction at this point if there was a — if your client believed there was something wrongful about that, they could go into contempt and then create jurisdiction on that basis? I think the case law supports that that's the proper procedure. I'll respond briefly, Your Honor. I know my time is up. In the McDonald v. Burrell case, which is a case cited in our brief in the motion for payment, the Second Circuit has previously held that you shouldn't have to go get a contempt citation against you simply to appeal an order. And I think this is where pendant jurisdiction or collateral — the collateral order rule would apply to allow the Court to proceed.  Thank you very much. Good morning, Your Honors. John Ciceroni on behalf of the Plaintiff Appellee Eliyahu Merlis, and may it please the Court. As a first matter, the district court did not abuse its discretion in entering a weekly payment order against Mr. Greer in the amount of $296 pursuant to Connecticut law when it took into account the prior rental of a piece of property in — in Newport, Rhode Island, based upon the facts at the time of that hearing that had shown that the property had a history of being rented. And certainly under Connecticut General Statute 52356D, which concerns weekly payment orders, there's really an equitable balancing. And a court is not limited to just considering wages or just considering one type of income or another. The Court has to look at the financial circumstances of the judgment debtor overall and then also look at what is a payment reasonably calculated to pay for the judgment. A judgment in this case, which was nearly $28 million and — and has accrued interest since then and very little that has actually been paid, and very little that had actually been paid at the — at the time of — of the hearing, and the Court was aware of that, unlike in the briefing of the plaintiff, I think it's pretty clear from the limited case law in Connecticut that there's no — and the statute itself, that there's no strict formula for deciding what a weekly payment order should be. But the Court's given some equitable discretion to fashion an order that balances the — the needs of the judgment creditor with the circumstances of the judgment debtor. As to the second issue with the — the denial of defendants' motion — both defendants' motion for a protective order, in the first instance, the Court doesn't have jurisdiction over that denial of the motion for a protective order because, at first, it's not a final  judgment. Secondly, it doesn't meet the collateral order doctrine that would be an exception to that, for the same reason that most discovery orders don't satisfy the collateral order doctrine, which is really the third part of it, is that the order is effectively unreviewable on appeal. Well, normally, with the — if it's — if it's pre-judgment discovery in a case before judgment, the discovery issues could be appealed with a judgment. With post-judgment discovery, what — and what a panel of this Court has said before is that the object of that particular discovery who has a motion for a protective order denied can then resist compliance, and then — in which case there would be a contempt order, and then that would be something that would be appealable to this Court. But as it — as it stands, the — the defendants didn't go that extra step and — and file this appeal before they had resisted compliance and there was a contempt order against them. Is that the only way that they could get review, by going in contempt, for a party in this situation? Well, I — I believe it is, unless there was no possible — so the — the court or this court in — it was EM Limited v. Republic of Argentina, suggests that — well, it doesn't suggest, but in that particular case, the court noted that the litigants couldn't get further relief from a United States court because the rest of the litigation would — would be in a foreign court. So there's no other avenue of relief in that case. That — that was one exception. But ordinarily, barring — barring that, I — I think that the precedent of this Court is that the — the defendants in this case would, in fact, have had to have a contempt order enter against them and appeal that contempt order to this Court for there to be jurisdiction. And even if there — there is jurisdiction, the — the court had — the district court has wide discretion as to issues that — that concern discovery. And this court won't reverse unless there's an abuse of discretion. And there was an abuse of discretion in this case. Post-judgment discovery, as — as this Court has noted before, is quite broad. And it allows a judgment creditor to — and to engage in an investigation of the assets of the judgment debtors wherever those assets are located. It also allows the judgment creditor to try to find concealed or hidden assets. And to that end, lower courts in this circuit have found that with respect to discovery directed toward non-parties and their financial affairs, that there has to be somewhat of a height in showing that there's — there's, you know, a reasonable need to ask those questions of — of those non-parties. And there are really two types of situations. One would be where there are fraudulent transfers. And the other would be where there's some type of alter ego liability. And in this matter, before the district court was evidence from the deposition transcript of Mr. Greer, which was also in his capacity on behalf of the yeshiva of New Haven, the other appellant, that showed that there was, you know, a considerable amount of evidence already showing that these — the yeshiva of New Haven and the various related entities that are referred to in the briefing are not run like most normal corporations with that type of separateness. Mr. Greer is on all the boards of directors. He has checksigning authority with his wife. And the district court lists a number of facts in coming to his decision, and those were cited by plaintiff — by the plaintiff when he objected to the defendant's motion for a protective order. So based on that, I submit that the district court did not abuse its discretion in allowing discovery of the non-party entities. Unless the court has any questions, I don't have anything further. Thank you, Your Honors. Thank you. To address the issue raised by Attorney Cessarone of the evidence, the heightened standard with respect to getting post-judgment discovery against a non-debtor I think is set forth well in the integrated control case, which is a Connecticut case written by Judge Dorsey. And specific — specifically what he says, and this is cited in our brief, is, Discovery related to the assets of non-debtors is permissible when there has been a reasonable belief that they have received assets transferred from the judgment debtor or a third party is believed to be the alter ego of the judgment debtor. There's no — there was no evidence cited either by the — by the plaintiff or the district court concerning either of those factors. The — What about the representations that opposing counsel just made about the alter ego status of the entities in question? Essentially, the argument that was made was because Mr. Greer did not know the names of the members of the board of directors and received a salary, that is enough to reach that heightened standard. The check-signing authority? He had check-signing authority. But any — anyone who is the president of a company would have check-signing authority. Mr. Greer was the president of these companies. There's no evidence of money flowing from the debtors or Mr. Greer to these entities. In fact, the extensive post-judgment documents were turned over. The only money flowed from the third-party entities to Mr. Greer or the yeshiva in the form of salary or grants. So the money is flowing the wrong way. Thank you. Thank you both. We'll take the matter under advisement. The next case is United States v. Salazar. Good morning. May it please the Court, my name is Avik Ganguly, and I represent the There are two compelling reasons that this Court should vacate the convictions with regards to Mr. Salazar. First, the evidence presented at trial failed to establish the substance traded by Mr. Salazar to Mr. Kroyak was in fact cocaine and therefore did not sufficiently corroborate Mr. Salazar's statement to law enforcement. This is a jury question, right? I'm sorry? Jury question? This is a jury question, and this is a sufficiency argument. You would concede, though, that there was some evidence, certainly, some evidence to support the idea, independent of his confession, that this was in fact cocaine, right? You just don't think it was enough. Yes, Judge. In Bryce, we said a defendant may be convicted of narcotics possession if some evidence, direct, circumstantial or otherwise, establishes that he possessed an illegal substance. So as long as there's some evidence, this isn't a case where there's no evidence. In fact, I was thinking as I was reading this, it's hard to, if you go through those factors that Bryce had, almost every factor is hit. The only factor we don't have is that he didn't use the cocaine, but every other factor was hit. It's a powdery substance. It's in a plastic bag. It was exchanged for a gun in a parking lot. He referenced that they knew he was trading cocaine for a gun. The witness testified to all those things. So almost every factor was hit. I, Judge, I don't believe that every factor was covered. Which factor was missing, other than the fact that he didn't actually use the substance? So in this particular case, Mr. Kroyak, if we look at the six criteria set forth in Bryce, Mr. Kroyak testified that Mr. Selzer gave him a white powdery substance in a bag knotted off. That, sorry. For cash. No, not for cash. For a gun. For a gun. And I think there's an important distinction that can be drawn. Bryce sets a standard that this circuit has followed for the past 20 years. And by looking at the facts of this case, and if accepting that what I believe boils down to just a description of white powdery substance, it would erode that standard. And this is why I believe that. The only description of the substance was white powder. That was the only description given during the trial of Mr. Kroyak. First off, no foundation was laid to describe what cocaine even looks like. There was no testimony from an expert or law enforcement to describe cocaine in general, or even being a white powder. But anyone who's watched television can fill those blanks in. Well, there's also a dozen other white powdery substances that it could have been. And so I believe that when you look at Bryce, there needs to be some more. Even though Bryce doesn't lay out a formula or a checklist, it does give a standard to look at. The exchange for a gun that was worth $300, it was in a parking lot, in a car in a parking lot. Every indication of this transaction indicates that it's an illicit substance, right? The gun itself, I would argue, doesn't have any value to Mr. Kroyak. He made clear in his testimony that he needed to get rid of it. In addition, he didn't treat the substance that he received with any value and didn't even treat it like cocaine. He said that he gave away half of it and then lost the rest of it. He never used it. Is there any case where people have exchanged a white powdery substance that they were believed was a cocaine transaction where that was determined to be not sufficient corroboration for a confession? Is there any case? Bryce itself, it was just a phone conversation where there was nothing else other than this defendant saying he had the ability to get cocaine. That was the facts of Bryce, which is a lot different than this. There was no white powdery substance in Bryce. Yeah. In this case, all we have is Kroyak's testimony saying there's a white powdery substance. The issue is whether or not that's sufficient to prove, beyond a reasonable doubt, that- You're saying a jury can't infer, even though it's a white powdery substance. We have to assume they believed Kroyak's testimony, right? For purposes of the verdict, for purposes of sufficiency. Correct. So they credited that it was a white powdery substance in a plastic bag that is the package cocaine. I think he said this was the packaging for cocaine is his own experience, right? He referred to it as standard packaging for buying. Right, saying that he had bought many times before, right? Multiple times before, I guess he said, right? I don't know that he specifically said that he had purchased cocaine multiple times in the past. He did- He was very familiar, had experience with cocaine. He said he had used cocaine numerous times in the past. Let me give you this scenario, JFK Airport case, where someone is told, bring this white powdery substance into the United States, we're going to put it in a luggage. Two people are assigned that task. One person confesses, right? And then the other person takes the stand and said, yes, we were told we're going to give $300 to bring this white powdery substance into the United States. They didn't, you know. You're saying there would be enough there? Yes, Judge, because, again, it's still- But it still has to be proven that the substance was a controlled substance. A lot of times, if they don't have the substance anymore, let's say it's a historical situation where, for whatever reason, they didn't get to test the substance. So someone is taking the stand saying, yes, that defendant and I had this white powdery substance, we were told to deliver it for X number of dollars. You're saying that's not enough under Bryce? It's not, not under Bryce. Bryce lays out a standard. Again, if you look at the facts of this case compared to the standards set forth in Bryce, there was no high cash paid for the substance.